IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

SAMUEL L. PRATT                                           PLAINTIFF

V.                              No. 14-5049

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration            DEFENDANT

### MEMORANDUM OPINION

Plaintiff, Samuel L. Pratt, brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying his claims for a period of disability and disability insurance benefits

(DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the

Social Security Act (Act). In this judicial review, the Court must determine whether there is

substantial evidence in the administrative record to support the Commissioner's decision. See

42 U.S.C. § 405(g).

I.      **Procedural Background:**

Plaintiff protectively filed his current applications for DIB and SSI on January 18, 2010,

alleging an inability to work since January 1, 2007, due to back injury, leg injury, depression,

anxiety, scoliosis, and learning disability. (Tr. 99-106, 109-110, 142-143, 147).    An

administrative hearing was held on October 16, 2012, at which Plaintiff appeared with counsel

and testified. (Tr. 25-58).

By written decision dated January 11, 2013, the ALJ found that Plaintiff had an

impairment or combination of impairments that were severe - disorder of the back and leg;

-1-

AO72A
(Rev. 8/82)

depression; anxiety; and borderline intellectual functioning. (Tr. 12). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 12). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can frequently climb ramps/stairs and occasionally climb ladders/ropes/scaffolds. He can frequently balance, stoop, kneel, crouch, and crawl. From a mental standpoint, he is able to perform work where interpersonal contact is incidental to the work performed; the complexity of tasks is learned and performed by rote, with few variables and little judgment; and the supervision required is simple, direct, and concrete.

(Tr. 14).  With the help of the vocational expert (VE), the ALJ determined that Plaintiff was unable to return to his past relevant work, but that there were other jobs Plaintiff would be able to perform, such as production assembler and poultry processor. (Tr. 17-18).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on December 4, 2013. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 11, 13).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

## I.   Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind

would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3), 1382(3)(D).  A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or

-3-

equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. <u>See</u> 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC. <u>See</u> <u>McCoy v. Schneider</u>, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

## III.   Discussion:

Plaintiff raises the following arguments on appeal: (1) The ALJ erred in his RFC determination; 2) The ALJ did not consider Plaintiff's impairment in combination; (3) The ALJ failed to fully and fairly develop the record with respect to Dr. Luo's findings; (4) The ALJ erred in his credibility findings; and (5) the ALJ's hypothetical posed to the VE was flawed. (Doc. 11).

### A.   RFC Determination:

Plaintiff argues that the ALJ erred in failing to afford proper weight to the Mental Evaluation performed by Dr. Scott McCarty.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. <u>Id</u>. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. <u>Guilliams v. Barnhart</u>, 393 F.3d 798, 801 (8th Cir. 2005); <u>Eichelberger v. Barnhart</u>, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." <u>Lauer v. Apfel</u>, 245 F.3d 700, 704 (8th Cir. 2001).

AO72A
(Rev. 8/82)

Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

On February 15, 2012, a Mental Diagnostic Evaluation and Intellectual Assessment was conducted by Scott McCarty, Ph.D. (Doc. 373). Dr. McCarty noted that pain indications were not observed and that Plaintiff followed directions and exhibited good effort, motivation, persistence, attitude, and concentration. (Tr. 374). He further reported that Plaintiff's full scale IQ was 76. (Tr. 375). Dr. McCarty diagnosed Plaintiff with social phobia, borderline intellectual functioning, and "R/O Learning Disorder," and gave him a GAF score of 44-54. (Tr. 375). Dr. McCarty reported that Plaintiff spoke clearly and adequately, which suggested sufficient capacity to communicate in an intelligible and effective way, but that his anxiety would present "tremendous limitations" in his capacity to interact in a socially adequate manner and to respond appropriately to supervisors and coworkers. (Tr. 376). He also found that Plaintiff evidenced solid processing speed yet "*limited* comprehension for verbal material," which would present "*tremendous* limitations" in his coping capacity for the typical mental/cognitive demands of basic work-like tasks. He therefore suggested that Plaintiff would have significant difficulty understanding, remembering, and carrying out verbal and written instructions. (Tr. 376). Dr. McCarty found that Plaintiff's borderline attention and concentration would present Plaintiff with moderate limitations in his ability to attend and sustain concentration on basic tasks in a 1:1 setting but that his anxiety would cause more "pronounced limitations" in this area when he was around a group of strangers. (Tr. 376). Dr. McCarty reported that Plaintiff possessed

AO72A
(Rev. 8/82)

sufficient capacity to persist at tasks until completion, but that when he was around several strangers, his anxiety likely would present "significant limitations" in this area. (Tr. 376). Finally, Dr. McCarty found Plaintiff possessed sufficient capacity to complete work-like tasks within an acceptable timeframe and to respond appropriately to work pressure when alone or in a 1:1 setting, but that when he was around a group of strangers, his anxiety likely would present "remarkable limitations" in this area. (Tr. 376).

On March 1, 2012, non-examining consultant, Sheri L. Simon, Ph.D., completed two Psychiatric Review Technique forms and a Mental RFC Assessment. (Tr. 570-582, 584-587, 588-600). In her Mental RFC Assessment, Dr. Simon found that Plaintiff was able to perform work where interpersonal contact was incidental to work performed, e.g. assembly work; where complexity of tasks was learned and performed by rote, with few variables, and little judgment, and where the supervision required was simple, direct and concrete (unskilled). (Tr. 586). On April 27, 2012, Dr. Simon's assessment was affirmed as written by Dr. Sharon Keith. (Tr. 679).

In his decision, the ALJ carefully addressed Dr. McCarty's findings. (Tr. 16). The ALJ noted that Plaintiff had no history of formal mental health treatment other than antidepressant medications prescribed by his primary care physician, and that Plaintiff reported he left his last job due to physical, not mental problems. (Tr. 16). The ALJ also noted that aside from some anxiety, Plaintiff's mental status exam was unremarkable for significant psychiatric symptoms. He acknowledged that there was evidence to support anxiety, depression and lowered cognitive functioning, but found it was not to the degree alleged and that from a mental standpoint, the objective evidence did not indicate that Plaintiff had any marked impairment in adaptive functioning. The ALJ concluded that although Plaintiff may have some problems functioning,

-6-

his symptoms did not preclude him from engaging in simple, repetitive, routine tasks, as set forth in his RFC. (Tr. 16).  The Court agrees.

The ALJ  noted that Plaintiff could go out alone and drive to go shopping in stores, enjoyed watching movies, fishing, and hunting, could spend time with others and had no problems getting along with family, friends, and neighbors. (Tr. 17). The Court notes that in his Function Report dated February 11, 2012, Plaintiff reported that he went to Red Box to get movies, did laundry, went to a friends house, waited for his children to get home and prepared snacks for them, and had no problems with personal care. (Tr. 158-159). He also reported that he vacuumed, went outside almost daily, and drove and rode in a car. (Tr. 160).  In addition, Dr. McCarty reported that Plaintiff could dress, bathe, cook, drive and shop independently. (Tr. 375). Plaintiff also testified at the hearing that he last worked as a janitor at the Northwest Arkansas Mall, would sometimes work 13-14 hours a day, and that the reason he left was not for mental reasons, but because he was losing feeling from his waist down. (Tr. 32).

In determining Plaintiff's RFC, the ALJ examined the medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations**.** He noted that the results of lumbar spine x-rays dated October 28, 2008, were normal (Tr. 15), and that with respect to Plaintiff's pain management and diagnoses given by Dr. Cathy Luo, there were no imaging studies in the longitudinal medical record that substantiated any of her diagnoses, nor was there any indication that Dr. Luo ever directed the Plaintiff to undergo further evaluation via diagnostic imaging. (Tr. 15). The ALJ also noted that according to Dr. Luo's records, in January and February 2012, Dr. Luo noted that Plaintiff reported his pain medications were working "good" (Tr. 15, 618, 705), although he asked for some adjustments in July of 2012. (Tr.

708).

The ALJ noted that lumbar x-rays showed mild arthritic changes involving the apophyseal joints; right ankle x-rays showed no acute abnormality, and exam notes state he was able to stand without difficulty and exhibited mild lumbar pain to palpation. (Tr. 15).

An ALJ may discount all or part of a treating physician's opinion if it is unsupported by medical findings, is inconsistent with other substantial medical evidence in the record, or is inconsistent with the evidence as a whole. See Estes v. Barnhart,, 275 F.3d 722 , 725 (8th Cir. 2002); Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001). The Court is of the opinion that the ALJ's consideration of Dr. Luo's treatment notes complies with this standard, because the ALJ's consideration of these notes was not only based on a lack of longitudinal imaging studies, but on the overall evidence of record containing x-rays and reported MRI findings, opinions of state agency medical consultants, and Plaintiff's reported activities of daily living.

Based upon the foregoing, the Court finds that there is substantial evidence to support the ALJ's RFC determination and the weight he gave to Dr. Scott McCarty's opinion.

**B.     Consideration of Impairments in Combination**:

In his decision, the ALJ set forth the fact that at step two, he must determine whether Plaintiff had "a medically determinable impairment that is 'severe' or a combination of impairments that is 'severe.'" (Tr. 11). He also stated that an impairment or combination of impairments is "not severe" when medical and other evidence established only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. (Tr. 11). The ALJ stated that at step three, he must determine whether the Plaintiff's "impairment or combination of impairments" meets or

-8-

medically equals the criteria of an impairment listed in the relevant listings. (Tr. 11). The ALJ concluded that Plaintiff did not have an impairment "or combination of impairments" that met or medically equaled the severity of one of the listed impairments. (Tr. 12-13). This language demonstrates that the ALJ considered the combined effect of Plaintiff's impairments. See Martise v. Astrue, 641 F.3d 909, 924 (8th Cir. 2011); Raney v. Barnhart, 396 F.3d 1007, 1011 (8th Cir. 2005).

Based upon the foregoing, the Court finds there is substantial evidence to support the fact that the ALJ considered all of Plaintiff's impairments individually, and in combination.

### C.    Failure to Fully and Fairly Develop the Record:

Plaintiff argues that the ALJ should have developed the record further with respect to Dr. Luo's findings and directed interrogatories to her regarding her basis for prescribing considerable amounts of narcotic medication to Plaintiff.   He further argues that because there is considerable evidence that Plaintiff has severe symptoms, the ALJ should have developed the record by ordering useful diagnostic imaging or an evaluation of Plaintiff's back impairments.

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995);   Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000).   This is particularly true when Plaintiff is not represented by counsel. Payton v. Shalala, 25 FG.3d 684, 686 (8th Cir. 1994).   This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary.   See 20 C.F.R. § 404.1512.   The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press his case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010).   However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record.   See

AO72A
(Rev. 8/82)

Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record

is only warranted where such failure is unfair or prejudicial").  "The regulations do not require

the Secretary or the ALJ to order a consultative evaluation of every alleged impairment.  They

simply grant the ALJ the authority to do so if the existing medical sources do not contain

sufficient evidence to make a determination."   Matthews v. Bowen, 879 F.2d 423, 424 (8th Cir.

1989).  "There is no bright line rule indicating when the Commissioner has or has not adequately

developed the record; rather, such an assessment is made on a case-by-case basis."  Mans v.

Colvin, No. 13-CV-2103, 2014 WL 3689797 at *4 (W.D. Ark., July 24, 2014)(quoting Battles

v. Shalala, 36 F.3d 43, 45 (8th Cir. 1994).

     As indicated above, the ALJ is required to develop a reasonably complete record. The

ALJ had before him imaging records, treatment records by Dr. Earl, progress records by Dr. Luo,

medications taken by Plaintiff, and reports of Plaintiff's daily activities. The Court finds that

the existing medical sources contain sufficient evidence to make a determination, and that the

ALJ did not fail to fully and fairly develop the record.

     **D.**    **Credibility Findings:**

     Plaintiff argues that the ALJ failed to properly discuss the Polaski factors in assessing

Plaintiff's credibility.

     In his decision, the ALJ found that Plaintiff's medically determinable impairments could

reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning

the intensity, persistence and limiting effects of the symptoms were not credible to the extent

they were inconsistent with the RFC. (Tr. 15). The ALJ noted that the mere inability to work

without some degree of pain or discomfort, of a minimal to mild nature, did not necessarily

constitute a "disability" for Social Security purposes, and while the record indicated Plaintiff had received pain management treatment, there was evidence that his level of pain had been consistently reduced to a low level with compliance to prescribed medications. (Tr. 16). Although the ALJ found that pain was substantiated by the record, he also found that Plaintiff's degree of pain relief seeking behavior and treatment was not indicative of a degree of pain that would limit activities beyond the scope of the RFC. (Tr. 16).

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

Plaintiff argues that the ALJ failed to discuss side effects of his medication. However, when Plaintiff was seen by Dr. Luo on September 26, 2011, January 23, 2012, March 14, 2012, May 21, 2012, and July 20, 2012, it was reported that Plaintiff denied any side effects to medications. (Tr. 361, 368, 618, 705, 708).

In addition, as Defendant noted, while the ALJ never expressly cited Polaski, he explicitly considered regulations which largely mirror the factors set forth in Polaski and a

-11-

Social Security ruling that tracks and expands on those factors. See Schultz v. Astrue, 479 F.3d

979, 983 (8th Cir. 2007).

Based upon the foregoing, as well as for those reasons given in Defendant's well-stated

brief, the Court finds there is substantial evidence to support the ALJ's credibility findings.

### E.     Hypothetical Posed to VE:

Plaintiff argues that the hypothetical posed to the VE was flawed and that the VE's

testimony did not constitute substantial evidence in support of a finding that Plaintiff was not

disabled.

At the hearing before the ALJ, the following hypothetical question was posed to the VE:

> Q: Hypothetical number one: Assume an individual with the same sage
> [sic] age, education, and work experience as that of the claimant; who has
> the ability to lift and/or carry 20 pounds occasionally, lift and/or carry 10
> pounds frequently. Stand and/or walk six hours out of an eight-hour
> workday with normal breaks. Sit six hours of an eight-hour workday with
> normal breaks. Sit six hours of an eight-hour workday with normal
> breaks. Push and pull with limitations pursuant for our lift and carry
> limitations. Able to climb ramps and stairs frequently. Able to climb
> ladders, ropes, and scaffolds occasionally. Able to balance, stoop, kneel,
> crouch, and crawl frequently. Able to perform work where interpersonal
> contact was incidental to work performed. Complex [INAUDIBLE] tasks
> as learned and performed by rote in variable to little judgment, and
> supervision required is simple, direct, and concrete.  Could an individual
> with these limitations perform the claimant's past work as it was actually
> performed or as is customarily performed pursuant to the Dictionary of
> Occupational Titles?

> A: I would say no. Most of the work – I don't know how long he was a
> cashier/checker. Cashier is normally – can be an unskilled job.
> Cashier/checker is a semi-skilled job....I would say no.

> Q: Addendum to hypothetical number one: Assume an individual with
> the same age, education, and work experience as that of the claimant who
> has the residual functional capacity that we've just described. Would
> there be any jobs this individual could perform that exists in the national
> or regional economy?

-12-

> A: Yes. There would be production-type work. Just – meaning – usually a [sic] assembling a wide range of products by hand or by machine. An example of production-type work would be an assembler of small products.
>             ...
> There would be some – poultry processing jobs, to include eviscerators, de-boners, dressers, killers.

(Tr. 51-53).

The Court finds that the hypothetical the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the VE's response to the hypothetical questions posed by the ALJ constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing the jobs of production assembler and poultry processor. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

IV.    **Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 6th day of February, 2015.

/s/ Erin L. Setser
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-13-